IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
KERSTIN LINDEMANN-MOSES,       )
                               )
          Plaintiff,           )
                               )
     v.                        )     1:20cv655
                               )
BARBARA JACKMON and            )
CHRISTOPHER JACKMON,           )
                               )
          Defendants.          )
```

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, Chief District Judge.

Before the court are two motions in which both parties appear *pro se*. First, Defendant Christopher Jackmon ("Christopher") moves for summary judgment.[1] (Doc. 47.) Plaintiff Kerstin Lindemann-Moses responded in opposition (Docs. 49, 50, 51,), and Christopher replied (Doc. 52). Second, Lindemann-Moses moves for leave to file a surreply. (Doc. 53.) Christopher responded in opposition (Doc. 54), and Lindemann-Moses replied. (Doc. 55.) For the reasons set forth below, Christopher's motion for summary judgment is granted, and Lindemann-Moses's motion for leave to file a surreply is denied.

**I. BACKGROUND**

Because this case was before the court on the motion for summary judgment by Defendant Barbara Jackmon ("Barbara"), which

---

[1] For clarity, the court refers to Christopher Jackmon as Christopher and former defendant Barbara Jackmon, Christopher's mother, as Barbara.

the court granted, the court offers only a short summary of the case history and facts for purposes of this motion. See Lindemann-Moses v. Jackmon, No. 1:20CV655, 2022 WL 17526745 (M.D.N.C. Dec. 8, 2022). In short, and viewed in the light most favorable to Lindemann-Moses as the non-moving party,[2] the facts establish the following:

In January 2016, Christopher began a relationship with Lindemann-Moses while he was incarcerated in a federal prison facility in South Carolina. (Doc. 1 ¶ 5.) Soon thereafter, Christopher convinced Lindemann-Moses to invest in a purported business venture, Nationwide Legal Services ("Nationwide"), which he presented as a lucrative investment opportunity. (Id. ¶ 6.) By 2017, Lindemann-Moses had transferred roughly $250,000 to Christopher in the belief she was investing in Nationwide. (Id. ¶ 19.) Eventually, however, Lindemann-Moses grew suspicious of her putative investment and confronted Christopher about what he had done with the money. (Id. 24.) After Christopher apparently told her that the money was "all gone" (id.), Lindemann-Moses began recovery efforts: on January 13, 2020, she received a Wells Fargo bank check for the sum of $20,000 (id. ¶ 31); on March 6, 2020, she received a second $20,000 Wells Fargo bank check (id.);[3] and

---

[2] See Harris v. Pittman, 927 F.3d 266, 272 (4th Cir. 2019).

[3] Presumably Christopher sent these checks, but Lindemann-Moses describes them in the passive voice.

2

finally, on May 18, 2020, Christopher paid her $50,000 in exchange for her signing a "Mutual and General Release of Claims" (the "Agreement") (id. ¶ 33; Doc. 9-7; Doc. 33-3; Doc. 47-2). The Agreement provided:

> WHEREAS Christopher Jackmon and Kerstin Moses were involved in an interpersonal relationship from 2016 until 2020, and the parties acknowledge that Kerstin Moses caused certain dollar amounts to be transferred to accounts held in the name of Christopher Jackmon; And that Christopher Jackmon delivered a certain amount of money to Kerstin Moses; and the parties not wanting to engage in costly litigation to determine the characterization and amount of the money that was transferred to the other party.
>
> NOW THEREFORE for full and fair consideration, the receipt of which is hereby acknowledged by the parties hereto, the parties to [sic] agree as follows:
>
> 1. Christopher Jackmon shall immediately pay to Kerstin Moses the sum of $50,000.00 dollars; and
>
> 2. Upon Kerstin Moses' receipt of the bank wire into her account ... in the above amount, the parties shall execute a release of all claims; and
>
> 3. All parties do release and forgive any and all claims they have against each other, and against any other parties regarding and/or in any way arising out of the Litigation. This is intended as a mutual and general release of all claims between the parties, their agents, successors, and affiliates ....

(Doc. 47-2.)

Approximately two months later, on July 15, 2020, Lindemann-Moses filed the present action asserting claims against both Christopher and Barbara for breach of contract, fraud, intentional infliction of emotional distress, interference with expectation of

3

inheritance, and unjust enrichment. (Doc. 1.) Barbara subsequently moved to dismiss the complaint. (Doc. 5.) This court granted the motion in part and dismissed all claims against Barbara except for those alleging conspiracy to defraud and unjust enrichment. (Doc. 10 at 18-19.)

On April 27, 2022, Barbara filed a motion entitled "Emergency Response." (Doc. 33.) The Magistrate Judge construed this filing as a motion for summary judgment and concluded that "it would be appropriate and helpful to consider [the issues raised in the motion] prior to proceeding to trial, particularly in light of the parties' pro se status." (Doc. 38 at 3.)

On December 8, 2022, this court granted Barbara's motion for summary judgment, concluding that Lindemann-Moses's claims were barred by the Agreement between Lindemann-Moses and Christopher. More specifically, the court found that "Barbara Jackmon is a third-party-beneficiary of the Agreement, and each of Lindemann-Moses's remaining claims against her, which are derivative of those claims against Christopher, are barred by it." Lindemann-Moses, 2022 WL 17526745, at *6.

As it relates to the claims against Christopher, the procedural history is more complicated. Despite numerous efforts, Lindemann-Moses had difficulty serving Christopher with a summons and complaint. (Docs. 16, 17, 19, 20, 21, 22.) On the same day this court issued its memorandum opinion and order on Barbara's

4

motion to dismiss, it notified Lindemann-Moses that her failure to serve Christopher might result in dismissal of the action against him without prejudice. (Doc. 11.) Finding that Christopher could not be served "with due diligence . . . by personal delivery, registered or certified mail, or by a designed delivery service as authorized by 26 U.S.C. § 7502(f)(2)," the Magistrate Judge granted another extension and granted Lindemann-Moses 60 days within which to serve Christopher by publication. (Doc. 22 at 7-8.) Thereafter, Lindemann-Moses timely filed an "Affidavit of Due Diligence," stating that she had served Christopher by publication in accordance with Federal Rule of Civil Procedure 4. (Doc. 23.) Nearly a year later, Christopher had still not filed an answer, and so Lindemann-Moses filed simultaneous motions for entry of default and default judgment. (Docs. 41, 42.) Weeks later, Christopher appeared in this action and responded in opposition to Lindemann-Moses's motions, seeking to raise the Agreement in defense of the complaint. (Doc. 44.) On December 8, 2022, in the same opinion the court granted Barbara's motion for summary judgment, the court denied Lindemann-Moses's motion for entry of default and default judgment, finding that Christopher had evinced an intent to defend the lawsuit. See Lindemann-Moses, 2022 WL 17526745 at *10. The court also granted Christopher's motion for leave to respond to the complaint with a motion for summary judgment and gave him until January 16, 2022, within which to file

5

any motion for summary judgment.  Id.

On December 22, 2022, Christopher filed the present motion for summary judgment, arguing that Lindemann-Moses's claims against him are barred by the Agreement.  (Doc. 47 at 3; Doc. 47-2.)  Lindemann-Moses filed a response in opposition (Doc. 49), along with a supplementary brief (Doc. 50) and an affidavit (Doc. 51), all of which are rambling and largely repeat, indeed at times verbatim, the same arguments Lindemann-Moses previously advanced in opposition to Barbara's motion for summary judgment.  (See Doc. 40.)  Principally, she contends that the Agreement is not enforceable because Christopher's venture was a fraud from the outset – part of a "fake love scam" through which Christopher deceived her "under the false pretext of a romantic relationship." (Doc. 49 ¶ 22; Doc. 50 ¶ 36; Doc. 51 ¶ 15-16.)  She also contends, at various times and in conclusory fashion, that she was "coerced" into signing the Agreement.  (Doc. 49 ¶ 13, 23; Doc. 50 ¶ 17; Doc. 51 ¶ 13.)  Christopher, in reply, largely reiterates that Lindemann-Moses's claims are barred by the Agreement.  (Doc. 52.) Thereafter, Lindemann-Moses filed a motion for leave file a surreply, claiming that Christopher's reply had raised "newly presented issues" that warranted a response.  (Doc. 53 at 1.) Christopher responded in opposition (Doc. 54), and Lindemann-Moses has replied (Doc. 55).

## II. ANALYSIS

### A. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Basnight v. Diamond Developers, Inc., 146 F. Supp. 2d 754, 760 (M.D.N.C. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In determining a motion for summary judgment, the court views the "evidence in the light most favorable to the non-moving party, according that party the benefit of all reasonable inferences." Id. Summary judgment should be denied "unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances." Guessford v. Pa. Nat'l Mut. Cas. Ins. Co., 983 F. Supp. 2d 652, 659 (M.D.N.C. 2013) (quoting Campbell v. Hewitt, Coleman & Assocs., Inc., 21 F.3d 52, 55 (4th Cir. 1994)).

While the movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact, once that burden has been met, the non-moving party must demonstrate the existence of a genuine dispute of material fact. Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 521-22 (4th Cir. 2003);

7

Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). A mere scintilla of evidence is insufficient to circumvent summary judgment. Anderson, 477 U.S. at 252; Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013) ("[T]he nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence."); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (noting that there is an affirmative duty for "the trial judge to prevent factually unsupported claims and defenses from proceeding to trial" (internal quotation marks omitted)). Instead, the nonmoving party must convince the court that, upon the record taken as a whole, a rational trier of fact could find for the nonmoving party. Anderson, 477 U.S. at 248-49. Trial is unnecessary if "the facts are undisputed, or if disputed, the dispute is of no consequence to the dispositive question." Mitchell v. Data General Corp., 12 F.3d 1310, 1315-16 (4th Cir. 1993).

As noted, both parties proceed pro se. Although courts must construe pro se filings liberally, "generosity is not fantasy." Bender v. Suburban Hosp., Inc., 159 F.3d 186, 192 (4th Cir. 1998). The court is not expected to advance a pro se litigant's claim or argument, id., or "construct full blown claims from sentence fragments," Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th

8

Cir. 1985). Likewise, a court should not "conjure up questions never squarely presented," id., or become an advocate for the pro se litigant, Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990). However, where pro se parties clearly fail to adequately present arguments and applicable law to the court, the court has an independent obligation to ensure that it not be the unwitting participant in the continuation of claims that are clearly contrary to law. Cf. Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993) (noting that the court cannot grant a motion for summary judgment merely because it is unopposed but rather must make an independent assessment whether the movant is "entitled to a judgment as a matter of law"); Gardendance, Inc. v. Woodstock Copperworks, Ltd., 230 F.R.D. 438, 448 (M.D.N.C. 2005) (same).

**B. Motion for Summary Judgment**

As noted, Christopher contends that Lindemann-Moses's claims are barred by the Agreement. (Doc. 47 at 7; Doc. 47-2.) Lindemann-Moses acknowledges having executed the Agreement (Doc. 51 ¶ 17) but argues it should not apply because Christopher's investment scheme was a fraud, and because she was coerced into signing it. (Doc. 49 ¶¶ 12-24.)

Here, for substantially the same reasons stated in the court's prior opinion granting summary judgment in Barbara's favor, Lindemann-Moses's claims against Christopher are plainly barred by

9

the Agreement. See Lindemann-Moses, 2022 WL 17526745 at *3. The plain language of the Agreement, the authenticity of which Lindemann-Moses does not contest, expressly declares that Christopher and Lindemann-Moses "do release and forgive any and all claims they have against each other" or "any other parties regarding and/or in any way arising out of" their dispute over the money she transferred to Christopher from 2016 to 2020.[4] (Doc. 47-2 at 1.) The reference to "the Litigation" does not render the Agreement ambiguous, as it could not be referring to anything other than the events giving rise to this lawsuit. The intent of the parties is clearer still, considering the text of the Agreement in its entirety. See Babcock & Wilcox Co. v. Areva NP, Inc., 788 S.E.2d 237, 244 (Va. 2016) ("When considering the meaning of any part of a contract, we will construe the contract as a whole, striving not to place emphasis on isolated terms wrenched from the larger contractual context[.]" (citations and internal quotation marks omitted)). Notably, the Agreement succinctly describes the background of the dispute ("Kerstin Moses caus[ing] certain dollar amounts to be transferred to accounts held in the name of Christopher Jackmon") and explains that the parties entered into the Agreement to avoid "engag[ing] in costly litigation to determine the characterization and amount of the money that was

---

[4] The court construes the Agreement under Virginia law. See Lindemann-Moses, 2022 WL 17526745 at *4.

10

Case 1:20-cv-00655-TDS-JEP   Document 56   Filed 04/19/23   Page 10 of 14

transferred" from Lindemann-Moses to Christopher. (Doc. 47-2 at 1.) Finally, the Agreement is by its terms a "general release" to Christopher and "any other part[y]" from "any and all claims" Lindemann-Moses and Christopher "have against each other," or "against any other parties regarding and/or in any way arising out of" this dispute. (Id.) "[T]he very nature of a general release is that the parties desire to settle all matters forever." Virginia Impression Prod. Co. v. SCM Corp., 448 F.2d 262, 265 (4th Cir. 1971) (applying Virginia law in interpreting a general release agreement). As such, a general release "not only settles enumerated specific differences, but claims of every kind or character, known and unknown." Id. (internal quotation marks omitted). Lindemann-Moses's argument that the Agreement is not enforceable because it purports to release Christopher from liability for fraud necessarily fails. "Even fraud cases can be settled." Metrocall of Delaware, Inc. v. Cont'l Cellular Corp., 437 S.E.2d 189, 194 (Va. 1993).

Lindemann-Moses's claim that she was "coerced" into signing the Agreement fails to create a genuine dispute of material fact. At various times, and consistently in conclusory fashion, she claims Christopher "coerced" her into signing the Agreement. (Doc. 49 ¶ 13, 23; Doc. 50 ¶ 17; Doc. 51 ¶ 17.) It is well established, however, that "conclusory statements unaccompanied by supporting facts in the record are insufficient to defeat a motion for summary

11

judgment." Montgomery v. Risen, 197 F. Supp. 3d 219, 262 (D.D.C. 2016), aff'd, 875 F.3d 709 (D.C. Cir. 2017). Although such allegations may be sufficient at the pleading stage, a party moving to defeat summary judgment is required to present record evidence testimony in support of her allegations. See Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002) ("Conclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of [the non-moving party's] case." (internal quotation marks omitted)). She has not done so here.[5] Rather, her claimed coercion is only her statement that Christopher told her that she would "get nothing" if she did not sign the Agreement and her charge that she was "deceived because there never existed a legitimate business opportunity." (Doc. 51 ¶ 17.) Neither constitutes a sufficient bases to create a fact question. See Freedlander, Inc., The Mortg. People v. NCNB Nat. Bank of N. Carolina, 706 F. Supp. 1211, 1216 (E.D. Va. 1988) (discussing Virginia law and explaining that "[t]o avoid the enforcement of [a] release [agreement] under a theory of duress, the plaintiffs must prove by clear, cogent, and convincing evidence . . . that [defendant] committed an unlawful or wrongful act sufficient to

---

[5] Lindemann-Moses's claims of coercion are also belied by the record. Shortly after the parties signed the Agreement and Christopher wired to Lindemann-Moses the agreed-upon $50,000 settlement payment, Lindemann-Moses sent Christopher's then-counsel what can only be described as an effusive email thanking him for his help in resolving the dispute. (See Doc. 49-22 at 1-2.)

12

preclude the plaintiffs from exercising their free will and thereby rendering the plaintiffs consent to the agreement involuntary"), aff'd sub nom. Freedlander v. NCNB Nat. Bank of N. Carolina, 921 F.2d 272 (4th Cir. 1990); Metrocall, 437 S.E.2d at 194-95 ("When one party . . . freely and for consideration, releases and promises not to sue for failure to disclose material facts and for misrepresentation, that party will not be heard to claim that the promise was fraudulently induced because material information was, in fact, not disclosed.")

Accordingly, Lindemann-Moses's claims against Christopher are barred by the Agreement, and Christopher's motion for summary judgment will be granted.

## C. Motion for Leave to File Surreply

Shortly after Christopher filed his reply brief, Lindemann-Moses moved for leave file a surreply, claiming that Christopher had raised "newly presented issues . . . which [she] has not had an opportunity to argue and raise in the instant matter which warrants the filing of the instant surreply." (Doc. 53 at 1.) According to Lindemann-Moses, Christopher argued for the first time in his reply brief that his "employment of an attorney . . . justif[ied]" what was otherwise fraudulent behavior. (Doc. 53-2 ¶ 2.) Though the court is doubtful that this was Christopher's argument at all, even assuming it – or any other argument - was raised for the first time in reply, Lindemann-Moses's proposed

13

surreply brief (Doc. 53-2) merely repeats the same arguments previously advanced in her response in opposition to Christopher's motion for summary judgment. (<u>Compare</u> Doc. 53-2 <u>with</u> Docs. 49, 50, 51.) Accordingly, "the proposed surreply does not . . . change the analysis set forth herein." <u>Bell v. Am. Int'l Indus.</u>, No. 1:17CV111, 2021 WL 2377086, at *2 (M.D.N.C. June 10, 2021). Moreover, "the court cannot say that fairness dictates that the surreply be allowed." <u>Luna-Reyes v. RFI Const., LLC</u>, 57 F. Supp. 3d 495, 499 (M.D.N.C. 2014). Lindemann-Moses had a fair opportunity to make her case in the response to the motion for summary judgment. Lindemann-Moses's motion for leave to file a surreply will therefore be denied.

## III. CONCLUSION

Whether or not Christopher Jackmon fraudulently induced Lindemann-Moses into a sham investment scheme, Lindemann-Moses knowingly and voluntarily elected to resolve her claims related to it. Her settlement and release of claims bars her attempt to revive them in this lawsuit. For the reasons stated, therefore,

IT IS ORDERED that Christopher Jackmon's motion for summary judgment (Doc. 47) is GRANTED, and Kerstin Lindemann-Moses's motion to file a surreply (Doc. 53) is DENIED.

/s/   Thomas D. Schroeder
United States District Judge

April 19, 2023

14

Case 1:20-cv-00655-TDS-JEP   Document 56   Filed 04/19/23   Page 14 of 14